*State of New Jersey*

PHILIP D. MURPHY
*Governor*

SHEILA Y. OLIVER
*Lt. Governor*

OFFICE OF THE ATTORNEY GENERAL
DEPARTMENT OF LAW AND PUBLIC SAFETY
DIVISION OF LAW
25 MARKET STREET
PO BOX
TRENTON, NJ 08625-0

GURBIR S. GREWAL
*Attorney General*

MICHELLE L. MILLER
*Director*

DEBORAH A. HAY, DAG
NJ Bar ID 020522011
Deborah.hay@law.njoag.gov

May 3, 2019

**VIA ECF**
Hon. Lois G. Goodman, U.S.M.J.
UNITED STATES DISTRICT COURT
Martin Luther King Building & U.S. Courthouse
50 Walnut Street, Room 4015
Newark, NJ 07101

Re:   **LaFrankie-Pricipato v. New Jersey Board of Public Utilities, et al.**
**Civil Action No. 18-CV-02258**

Dear Judge Goodman:

This office represents Defendants in the above-referenced matter. As requested, the parties are submitting this joint letter to address outstanding discovery issues in this case. The parties have conferred and reached an agreement upon the majority of supplemental discovery requests. The parties' respective positions on the two (2) outstanding discovery issues are below.

1) **Plaintiff's Medical Records from Dr. Klien and Dr. Cooperstein**

   a. **Defendants' Position**

   In this matter, Plaintiff seeks damages for emotional distress as result of the alleged actions of Defendants, but is attempting to deny Defendants access to her mental health treatment records. Defendant is entitled to inquire into the nature of Plaintiff's emotional distress, and whether it was



HUGHES  JUSTICE COMPLEX  •  TELEPHONE: (609) 292-6252  •  FAX: (609) 984-6446
*New Jersey Is An Equal Opportunity Employer  •  Printed on Recycled Paper and Recyclable*

caused by a source other than Defendant. Plaintiff's medical records are relevant to the issues in this case and Plaintiff's objections to disclosure are not supportable, if she intends to continue to pursue emotional distress damages in this matter.

In her deposition, Plaintiff testified that she was treating with Dr. Cooperstein, a psychiatrist, and that Dr. Cooperstein referred her to Shari Botwin, a social worker. Ms. Botwin's name was provided in discovery in this case, as a medical provider having treated Plaintiff for emotional distress. In addition, notes from Plaintiff's treatment with Ms. Botwin were produced in discovery by Plaintiff (bates labeled S. LaFrankie-Principato 0001) and Dr. Cooperstein is referenced in those notes. However, when the defense questioned the Plaintiff regarding the nature of her treatment with Dr. Cooperstein, Plaintiff's counsel improperly instructed his client not to answer. The defense also attempted to inquire about Plaintiff's treatment with Dr. Barbara Klein, a psychotherapist, who is also referenced in the notes Plaintiff produced from Ms. Botwin (bates labeled S. LaFrankie-Principato 0001). Again, Plaintiff's counsel improperly instructed his client not to answer questions regarding her treatment. The information sought by Defendants was both relevant and likely to lead to admissible evidence in this matter.

New Jersey courts have repeatedly upheld the principle that a plaintiff's medical history is discoverable when the plaintiff has put his or her medical or psychological condition at issue in litigation. See Stigliano by Stigliano v. Connaught Laboratories, Inc., 140 N.J. 305, 311 (1995) (a privilege should not be allowed to "frustrate discovery" or "hide the truth"); see also Stempler v. Speidell, 100 N.J. 368, 373 (1985) ("instituting suit extinguishes the privilege to the extent that [plaintiff's] medical condition will be a factor in the litigation"); see also Jackson v. Chubb Corp., 193 F.R.D. 216, 226 (D.N.J. 2000) (finding that "[i]n the interests of justice, the broader 'at issue' approach caters to both the plaintiff's and the defendant's respective interests in a lawsuit and

embraces the reality that a party to a lawsuit must always choose which claims or defenses to pursue and which ones to forego, recognizing that the success of certain claims and defenses hinges on disclosure of confidential personal or financial information, as well as waiver of certain privileges.").

Since Plaintiff is seeking emotional distress damages, she has put her mental state at issue in this case. Defendants are entitled to relevant discovery related to her treatment to determine whether Defendants' actions caused her emotional distress or whether some underlying condition caused her emotional distress. Plaintiff was receiving treatment for other psychiatric issues or unrelated stressors and that information is entirely relevant to determining if Plaintiff's emotional distress was caused by Defendants in this case. Thus, Defendants request that the Court order Plaintiff to produce medical records regarding her own treatment with Dr. Barbara Klein and Dr. Heidi Cooperstein or, in the alternative, dismiss Plaintiff's claim for emotional distress damages, as Defendants have no meaningful opportunity to defend against it.

### b. Plaintiff's Position

The mere fact that Plaintiff is seeking statutorily defined damages for emotional pain and suffering does not entitle defense counsel and the defendants to go on a fishing expedition through her medical history.   The Plaintiff specifically testified that she did **not** seek treatment relevant to this matter with either of the requested doctors.  Notably, Plaintiff only seeks damages under the NJFLA and not the FMLA.  The NJFLA emotional pain and suffering damages are akin to those typically available under the New Jersey Law Against Discrimination ("LAD").  N.J.S.A. 34:11B-11 (adopting damages of the LAD at N.J.S.A. 10:5-17).  The only damages that Plaintiff is seeking in that regard are "statutory" or "garden variety."  Plaintiff has not and does not intend to produce any expert testimony.

In creating the LAD, the New Jersey State Legislature found that certain "statutory" or what have been referred to as "garden variety" emotional distress damages occurred as a result of employment discrimination.  For the purpose of this brief Plaintiff will refer to these as "statutory" emotional distress damages.  The LAD states:

> The Legislature further finds that because of discrimination, people suffer personal hardships, and the State suffers a grievous harm. The personal hardships include: economic loss; time loss; physical and emotional stress; and in some cases severe emotional trauma, illness, homelessness or other irreparable harm resulting from the strain of employment controversies; relocation, search and moving difficulties; anxiety caused by lack of information, uncertainty, and resultant planning difficulty; career, education, family and social disruption; and adjustment problems, which particularly impact on those protected by this act. Such harms have, under the common law, given rise to legal remedies, including compensatory and punitive damages. The Legislature intends that **such damages be available to all persons protected by this act** and that this act shall be **liberally construed in combination with other protections** available under the laws of this State.

N.J.S.A. § 10:5-3 (emphasis added).

In defining the statutory damages, the New Jersey Supreme Court has held that "To suffer humiliation, embarrassment and indignity is by definition to suffer emotional distress." *Tarr v. Ciasulli*, 181 N.J. 70, 81 (2004).  The court has held that statutory emotional distress in LAD cases does not require medical or expert testimony.  *Id.*  The court reasoned that "Emotional distress actually suffered in that manner by the victim of proscribed discrimination is compensable **without corroborative proof, permanency of response, or other physical or psychological symptoms rendering the emotional distress severe or substantial.**"  *Id.* (emphasis added).  The court in *Tarr* reasoned that "we are satisfied that compensatory damages for emotional distress, including humiliation and indignity resulting from willful discriminatory conduct, are remedies that require **a far less stringent standard of proof** than that required for a tort-based emotional distress cause of action."  *Id.* at 82 (emphasis added).

The New Jersey Supreme Court also held in *Battaglia v. United Parcel Serv., Inc.*, 214 N.J. 518 (2013) that statutory emotional distress damages can be established simply by the plaintiff's testimony.  The court held that:

> This Court has long recognized plaintiff's right to recover for emotional distress in litigation brought pursuant to the LAD, and to do so **without resort to expert testimony**. We have commented that given the breadth of individual and societal harms that flow from discrimination and harassment, to limit the LAD's application to only those cases in which the victim suffered, or could have suffered, **serious psychological harm** would be **contrary to its remedial purpose.**

*Id.* at 552 (emphasis added).  The court reasoned that statutory emotional distress can be established by "lay testimony alone" while in order to establish "severe emotional" or physical distress, such as future damage, the plaintiff must provide additional corroborative evidence.  *Id.* at 553-54.

Again recently in the matter of *Cuevas v. Wentworth Grp.*, 226 N.J. 480 (2016) the New Jersey Supreme Court held that statutory emotional distress under LAD is the type established without introducing additional psychological or medical evidence of harm.  *Id.* at 511-12.  The court held as follows in *Cuevas*:

> In passing the LAD, the Legislature specifically found that victims of discrimination "suffer personal hardships" among which are "physical and emotional stress"; "severe emotional trauma"; "anxiety"; and "career, ... family and social disruption." *N.J.S.A.* 10:5-3. The Legislature understood the psychological toll that discrimination may have on victims.
> . . . .
> Indeed, "the Legislature intended victims of discrimination to obtain redress for mental anguish [and] embarrassment," **even when their emotional and physical ailments cannot be characterized as severe.** *Tarr, supra*, 181 *N.J.* at 81, 853 *A.*2d 921. Because of the special harm caused by willful discrimination in the workplace, "compensatory damages for emotional distress, including humiliation and indignity ..., are remedies that require a far less stringent standard of proof than that required for a tort-based emotional distress cause of action." *Id.* at 82, 853 *A.*2d 921. Specifically, in a LAD case, a plaintiff **is not required to provide "expert testimony or independent corroborative evidence ... to support [an] award of emotional distress damages."** *Id.* at 79, 853 *A.*2d 921 (citing *Rendine, supra*, 141

> *N.J.* at 312, 661 *A*.2d 1202). Plaintiffs in this case were entitled to "recover all natural consequences of [defendants'] wrongful conduct, including emotional distress and mental anguish damages arising out of embarrassment, humiliation, and other intangible injuries."

*Id.* (emphasis added).

The New Jersey state legislature and New Jersey Supreme Court have established that a plaintiff in a LAD case is entitled to statutory or garden variety emotional distress damages that can be established with lay testimony. *See* N.J.S.A. § 10:5-3; *accord Battaglia*, 214 N.J. at 553-54. In order to establish "severe" emotional distress, the type that may continue in the future, a plaintiff must introduce independent medical, psychiatric or other expert testimony to support it. *See Battaglia*, 214 N.J. at 553-54.

The New Jersey District Court has held a plaintiff does not waive privilege when he brings a claim for statutory or garden variety emotional distress in a civil rights case. For example, in *Jackson v. Chubb Corp.*, 193 F.R.D. 216 (D.N.J. 2000) the New Jersey District Court held that the plaintiff waived her psychiatrist-patient privilege because she alleged **more than** "garden variety" or statutory emotional distress. The court held that "This Court concludes that when a plaintiff places his/her current mental condition at issue, by asserting **other than a 'garden variety'** anxiety claim, the psychotherapist-patient privilege to current and ongoing mental health records is waived." *Id.* at 227 (emphasis added). The court reasoned that the plaintiff did not assert only a statutory or garden variety emotional distress claim because "plaintiff clearly intends to use these psychotherapist/patient communications as evidence, in furtherance of her claims of emotional distress. She has not only injected her more recent symptoms and newly-diagnosed disorders into the case through Dr. Peckman, but she has insisted on maintaining and supporting her allegations of continuing severe distress." *Id.*

Other federal courts have found no waiver exists where a plaintiff alleged only statutory or garden variety emotional distress.  For example, in *E.E.O.C. v. Nichols Gas & Oil, Inc.*, 256 F.R.D. 114 (W.D.N.Y. 2009) the plaintiffs made sexual harassment claims and the defendants filed a motion to compel "Any and all documents directly or indirectly relating to the examination, diagnosis, or treatment of each and every claimant by a physician, psychiatrist, psychologist, social worker, counselor or other medical or mental health practitioner who examined, diagnosed or treated each and every claimant since January 1, 1999."  256 F.R.D at 116.  The court denied the defendant's motion.  In doing so, the court recognized the second circuit's holding in *In re Sims*, 534 F.3d 117, 141 (2d Cir. 2008) that where a party makes a claim for "garden variety" emotional distress the party does not waive doctor-patient privilege. *See Nicholas Gas*, 256 F.R.D. at 121.

In *Fitzgerald v. Cassil*, 216 F.R.D. 632 (N.D. Cal. 2003) the plaintiffs brought a claim for discrimination based on familial status.   *Id.* at 633.  The plaintiffs alleged they "suffered emotional distress and attendant bodily injury as a result of Defendants' conduct."  *Id.*  The defendants then served subpoenas seeking medical and psychological records of the plaintiffs, which the plaintiffs moved to quash.  *Id.*  The court granted the plaintiffs' motion.  The court reasoned that "for policy reasons, a waiver of the psychotherapist-patient privilege should not be narrowly construed, particularly in civil rights cases where Congress has placed much importance on litigants' access to the courts and the remedial nature of such suits."  *Id.* at 639.  In applying the facts of that case, the *Fitzgerald* court reasoned as follows:

> Plaintiffs have not waived the psychotherapist-patient privilege. Plaintiffs have stipulated that they will not affirmatively rely on any treating psychotherapist or other expert to prove the emotional distress damages suffered by Mr. Fitzgerald and Mr. Yu.  The Court notes that, even if the middle ground approach to waiver (*i.e.,* "garden-variety" emotional distress) were applied, no waiver would be found in the

> instant case. Plaintiffs have not pled a cause of action for intentional or negligent infliction of emotional distress and have not alleged a specific psychiatric injury or disorder or unusually severe emotional distress extraordinary in light of the allegations.

*Id.* at 639-40.

Even when a plaintiff alleges a specific psychiatric injury (unlike the Plaintiff in this case), courts do not invariably order the disclosure of all of the plaintiff's medical records.  For example, *Broderick v. Shad*, 117 F.R.D. 306 (D.D.C. 1987) was a Title VII sex discrimination and harassment case.  Unlike this case, the plaintiff in *Broderick* alleged "severe psychological stress."  *Id.* at 309.  On that basis, the defendant sought the disclosure of plaintiff's medical records covering an eleven year period.  *Id.*  The court denied the request.  *Id.*  The court held that

> The focus of this action is not on plaintiff's physical or mental injuries, but rather on the alleged discrimination and harassment by the SEC. Since Broderick has offered a sworn statement that she has not sought or received medical treatment for the conditions alleged in of her complaint and that no relevant medical records exist, we deny as irrelevant and intrusive defendant's motion to compel a wholesale investigation of plaintiff's medical history over the past 11 years.

*Id.*  In *Smith v. J.I. Case Corp.*, 163 F.R.D. 229 (E.D. Pa. 1995), a products liability action, even though the plaintiff admittedly had seen a psychologist the court still held that the records of the treatment were not discoverable.   *Id.* at 232.  The court held that "Any psychiatric disorders from which plaintiff has suffered are not relevant to this case . . . so long as plaintiff does not claim that psychological treatment for the 'embarrassment' which he suffers as a result of his injury is compensable, I shall not require him to provide defendant with records of therapy sessions in which he discussed this issue."  *Id.*

Finally, the case cited by Defendant in its email, *Stigliano by Stigliano v. Connaught Labs., Inc.*, 140 N.J. 305 (1995), supports Plaintiff's argument that doctor-patient privileged is only

waived where the plaintiff seeks to use medical records to support his claim.  Unlike this case, *Stigliano* was a medical malpractice case where the plaintiff's seizure disorder was the subject of the lawsuit.  *Id.* at 307.  Also unlike this case, the plaintiff did not "challenge the waiver of the privilege concerning treatment and diagnosis of [the plaintiff's] seizure disorder" and conceded "that the treating doctors may testify as fact witnesses about their examination and diagnoses of [the plaintiff's] condition."  *Id.* at 312.  The only argument the plaintiff made was that the defendants could not "elicit causation testimony from those doctors."  *Id.*  The court held that because the plaintiff waived the privilege as to the doctor's examination and diagnoses – unlike this case – the plaintiff also waived privilege as to causation.  *Id.*  The obvious difference between this case and *Stigliano* is that Plaintiff is not affirmatively introducing medical or psychiatric evidence to support any of his claims.  Therefore, she has not waived privilege as the plaintiff did in *Stigliano*.    Plaintiff will concede that she will not call Ms. Botwin as a witness at the time of trial and will not seek to use in evidence her one page of records.

The prevailing holding of courts addressing the issue is that if a plaintiff only alleges statutory or garden variety emotional distress for humiliation, embarrassment and indignity, and does not attempt to introduce medical or psychiatric evidence to support the claim, the plaintiff has not put her mental state at issue and waived privilege.  Accordingly, Plaintiff respectfully requests that Defendants' request for medical records be denied.

2) **Plaintiff's Son's Medical Records from September 13, 2016**

    a.  **Defendants' Position**

After Plaintiff's deposition, Defendant's sent a letter requesting Plaintiff's son's medical records from his emergency room visit on or about September 13, 2016. During her deposition, Plaintiff testified that her son visited the emergency room on or about September 13, 2016. She

further indicated that she had obtained medical records from her son's trip to the emergency room on that date. This trip the emergency room is particularly significant in this case because Plaintiff testified that she made her decision to take FMLA leave to care for her son right after that ER visit. In addition, it is alleged by Plaintiff that the ER visit occurred the day before Plaintiff submitted her application for FMLA, September 14, 2016.

While Defendants are not seeking broad discovery regarding the nature of Plaintiff's son condition, arguably Plaintiff has already waived any right to privacy regarding her son's records by producing some of her son's medical records in discovery in this case. In fact, over three hundred (300) pages of Plaintiff's son's medical records, dating between 2014 and 2017, were produced in discovery by Plaintiff (bates labeled S. LaFrankie-Principato 00002-00359). However, the medical records from the emergency room visit on September 13, 2016, which Plaintiff testified that she obtained, are inexplicably missing. These records are relevant and necessary for Defendants to test the credibility of Plaintiff's claims in this case.

Discovery is governed by Fed. R. Civ. P. 26, which states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense... Information within this scope of discovery need not be admissible at trial to be discoverable." "The broad scope of discovery rules and the liberal interpretation given them by the courts demonstrates that Congress realized that a 'mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.'" Lesal Interiors v. Resolution Trust Corp., 153 F.R.D. 552, 560 (1994), quoting Hickman v. Taylor, 329 U.S. 495, 507-508 (1947). In light of the timing of this particular emergency room visit and the nature of the Plaintiff's claims, Defendants respectfully request that the Court order the Plaintiff to produce a copy of her son's medical records from that specific ER visit.

### b. Plaintiff's Position

Plaintiff objects to the request for any further medical documentation relating to the care of a non-party to this litigation. The claims before the Court concern whether or not Defendants terminated Plaintiff's employment in order to interfere with her ability to exercise FMLA and/or NJFLA leave. The hospital visit of a third party is of absolutely no relevance to assess the Defendants' motivation in terminating Plaintiff's employment. Plaintiff has already provided all of the medical records that supported her need for FMLA and NJFLA leave. Other medical records have no relevancy and are invasive of a non-party's medical privacy. Although Plaintiff is the third party's mother she is not in a position to obtain or release her son's medical records without his consent.

Fed. R. Civ. Pro. 26, which governs discovery, was recently amended. Rule 26(b)(1) now includes a discussion of proportionality, stating:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

As Chief Justice Roberts wrote of these amendments, "[t]he key here is careful and realistic assessment of actual need" that may "require the active involvement of a neutral arbiter—the federal judge—to guide decisions respecting the scope of discovery." Chief Justice John Roberts, "2015 Year–End Report on the Federal Judiciary," Dec. 31, 2015 (Roberts Report), at 7, available at http://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf.

Plaintiff's son's medical records are, in fact, privileged under the physician-patient privilege. "The traditional justification for the physician-patient privilege is that it encourages patients to disclose freely information needed for the diagnosis and treatment of disease and injury." *Stigliano by Stigliano v. Connaught Laboratories, Inc.*, 140 N.J. 305, 310-11 (1995) (citing *State v. Schreiber*, 122 N.J. 579, 587 (1991); McCormick, Handbook of the Law of Evidence § 103 at 84 (4th ed. 1992) ). *See also*  Fed. R. Evidence 501.  There is simply no basis to further invade the privilege of a non-party.  As such, Plaintiff respectfully requests that that this request be denied.

Thank you for your consideration in this matter.

<div style="margin-left:40%">

Respectfully submitted,

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY

By: /s/ Deborah A. Hay
   Deborah A. Hay, Deputy Attorney General

COSTELLO & MAINS, LLC

By: /s/ Daniel T. Silverman
   Daniel T. Silverman, Esq.

</div>